UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JIMMY TODD KIRKSEY, ) | |
| ) | |
| Petitioner, ) | 2:97-CV-0333-GMN-PAL |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| RENEE BAKER, *et al.*, ) | |
| ) | |
| Respondents. ) | |
| ) | |

In this habeas corpus case under 28 U.S.C. § 2254, the respondents have filed a motion entitled "Motion to Dismiss Certain Claims Contained Within Petitioner's Fourth Amended Petition For Writ of Habeas Corpus," in which they argue that numerous claims in petitioner's fourth amended petition for writ of habeas corpus (ECF No. 177) should be dismissed on the grounds of procedural default, untimeliness, and mootness. ECF No. 193. Petitioner Kirksey has filed an opposition to the motion to dismiss and moved the court for an evidentiary hearing. ECF Nos. 202, 204. Respondents have filed a reply in support of their motion to dismiss. ECF No. 207.

I. *Procedural History*

On October 2, 1989, petitioner Kirksey entered a guilty plea to first degree murder in the Eighth Judicial District Court of Nevada. A three-judge panel was appointed to preside over sentencing and recommended a sentence of death. The court entered a judgment of conviction on January 12, 1990.

On appeal, the Nevada Supreme Court concluded that two of the aggravating circumstances found by the three-judge panel should not have been considered, but affirmed the conviction and sentence. *Kirksey v. State*, 107 Nev. 499, 814 P.2d 1008 (1991). The United States Supreme Court denied Kirksey's petition for writ of certiorari on December 2, 1991. *Kirksey v. Nevada*, 502 U.S. 989 (1991).

On February 28, 1992, Kirksey filed a petition for post-conviction relief in the state district court pursuant to former Nev. Rev. Stat. Chapter 177. An evidentiary hearing was conducted on February 1, 1993. On April 14, 1993, the district court denied the petition. The Nevada Supreme Court affirmed the order of the district court on August 16, 1996 (rehearing denied January 4, 1997). *Kirksey v. State*, 112 Nev. 980, 923 P.2d 1102 (1996).

On March 21, 1997, Kirksey filed a federal petition initiating the instant proceeding. Shortly thereafter, the court appointed Patricia Erickson, who had represented Kirksey in state post-conviction proceedings, to serve as his counsel in this proceeding. On December 11, 1997, the Federal Public Defender was appointed as co-counsel. On January 26, 1998, Kirksey filed a first amended federal habeas petition for writ of habeas corpus, pursuant to an order of the federal court requiring the filing of an amended petition within forty-five days. Following extensive discovery proceedings related to the trial court's role in the creation of a psychiatric evaluation, including several depositions and retention of a questioned documents examiner, Kirksey filed a third amended federal petition on October 7, 2002.

On March 6, 2003, Kirksey filed a post-conviction petition for a writ of habeas corpus in the state district court. On May 6, 2003, this court stayed federal proceedings to allow Kirksey an opportunity to exhaust his unexhausted federal claims in state court. The State opposed Kirksey's state petition as procedurally barred and specifically pleaded laches. The state district court ordered the State to respond to the claims on the merits and set the matter for an evidentiary hearing.

The State sought extraordinary relief with the Nevada Supreme Court by way of a petition for a writ of prohibition or mandamus challenging the order granting the evidentiary hearing. The Nevada Supreme Court granted the petition in part, concluding that a full hearing on Kirksey's numerous claims was not warranted due to the procedural bars. In denying the petition in part, the court determined that an evidentiary hearing was necessary to consider whether Kirksey could show good cause for raising claims related to his competency and possible judicial bias and whether Kirksey is mentally retarded, the latter of which would require that the death sentence be vacated

pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002).

On February 6, 2006 through February 8, 2006, a limited evidentiary hearing was conducted concerning those claims. The state district court determined that appellant was mentally retarded and ordered a new sentencing hearing. The state district court also concluded that appellant failed to demonstrate good cause and prejudice to overcome the procedural bars. Thus, on March 2, 2007, the district court granted the petition as to the claim of mental retardation, but denied the remainder of the claims in the petition as procedurally barred. Kirksey appealed.

On August 21, 2009, the Nevada Supreme Court entered an order affirming the denial of Kirksey's state petition on procedural grounds. On January 7, 2010, the Nevada Supreme court denied en banc reconsideration.

On April 5, 2010, Kirksey filed a motion to vacate the stay herein, which was unopposed by the Stated and granted by the court. Kirksey then filed this his Fourth Amended Petition for Writ of Habeas Corpus. The scheduling order entered on July 20, 2010, directed the respondents to file "an answer or other response" to Kirksey's his fourth amended petition for writ of habeas corpus on or before September 30, 2010. On that date, the respondents filed a motion entitled "Motion to Dismiss Petition for Writ of Habeas Corpus, or Alternatively to Hold Proceedings in Abeyance Pending Resentencing of Petitioner."

On December 23, 2010, the court denied the respondents' motion and ordered them to file an answer to the fourth amended petition within sixty days. After requesting and receiving two extensions of time, the respondents filed, on June 20, 2011, the motion that is before the court for decision. Kirksey moved to strike the motion, arguing that the court had ordered respondents to file an answer under Rule 5 of the Rules Governing Section 2254 Cases, not a motion to dismiss. On October 11, 2011, this court denied the motion to strike and directed Kirksey to file his response to the motion to dismiss. With briefing on the motion to dismiss completed, the court finds and concludes as follows.

/ / /

II. *Procedural Default*

A federal court will not review a claim for habeas corpus relief if the decision of the state court denying the claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). The Court in *Coleman* stated the effect of a procedural default as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

A state procedural bar is "independent" if the state court explicitly invokes the procedural rule as a separate basis for its decision. *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995). A state court's decision is not "independent" if the application of a state's default rule depends on a consideration of federal law. *Park v. California*, 202 F.3d 1146, 1152 (9th Cir. 2000). Also, if the state court's decision fails "to specify which claims were barred for which reasons," the Ninth Circuit has held that the ambiguity may serve to defeat the independence of the state procedural bar. *Valerio v. Crawford*, 306 F.3d 742, 775 (9th Cir. 2002); *Koerner v. Grigas*, 328 F.3d 1039, 1050 (9th Cir. 2003).

A state procedural rule is "adequate" if it is "clear, consistently applied, and well-established at the time of the petitioner's purported default." *Calderon v. United States Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996) (citation and internal quotation marks omitted). In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals announced a burden-shifting test for analyzing adequacy. Under *Bennett*, the State carries the initial burden of adequately pleading "the existence of an independent and adequate state procedural ground as an affirmative defense." *Id*. at 586. The burden then shifts to the petitioner "to place that defense in issue," which the petitioner may do "by asserting specific factual allegations that demonstrate the inadequacy of the

state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* Assuming the petitioner has met his burden, "the ultimate burden" of proving the adequacy of the state bar rests with the State, which must demonstrate "that the state procedural rule has been regularly and consistently applied in habeas actions." *Id*.

In affirming the lower court's denial of relief in Kirksey's second state post-conviction proceeding, the Nevada Supreme Court stated:

> Appellant filed his petition more than 12 years after this court issued the remittitur from his direct appeal. Thus, appellant's petition was untimely filed. *See* NRS 34.726(1). Moreover, appellant's petition was successive because he had previously filed a petition for postconviction relief in which he raised claims 2, 6, 9, 17, 23, and 26. See NRS 34.810(1)(b); NRS 34.810(2). Further, appellant's petition constituted an abuse of the writ as claims 1, 3-5, 7-8, 18, 20, 24, 27, and 36 were new and different from those claims raised in his previous post-conviction petition. *See* NRS 34.810(2). Appellant's petition was procedurally barred absent a demonstration of good cause and actual prejudice. *See* NRS 34.726(1); NRS 34.810(3). Further, because the State specifically pleaded laches, appellant was required to overcome the presumption of prejudice to the State. *See* NRS 34.800(2). "Application of the statutory procedural default rules to post-conviction habeas petitions is mandatory." *See State v. Dist. Ct. (Riker)*, 121 Nev. 225, 231, 112 P.3d 1070, 1074 (2005).

ECF No. 180-5, p. 257.

Under Nev. Rev. Stat. § 34.726(1), a petition is untimely if filed later than one year after the entry of the judgment of conviction or, if an appeal has been taken from the judgment, within one year after the Nevada Supreme Court issues its remittitur. Nev. Rev. Stat. § 34.810 addresses successive petitions and requires dismissal of claims that have already been raised and adjudicated on the merits, as well as claims that could have been raised in an earlier proceeding, but were not. Nev. Rev. Stat. § 34.800 is a statutory laches rule imposing a rebuttable presumption that prejudice to the State sufficient to warrant dismissal exists if a petition is filed more than five years after the conclusion of direct appeal.

The Nevada Supreme Court analyzed and rejected the good cause and actual prejudice arguments raised by Kirksey to overcome the procedural default of his claims. ECF No. 180-5, p. 258-69. The court also concluded that Kirksey's actual innocence claim was without merit. *Id*., p. 270.

1    Respondents assert that practically all the claims in Kirksey's fourth amended petition for
2 writ of habeas corpus are procedurally defaulted.  They meet their initial pleading burden under
3 *Bennett* by asserting that the Nevada Supreme Court's application of Nev. Rev. Stat. § 34.726 to
4 Kirksey's second state post-conviction petition constitutes an independent and adequate state
5 procedural ground for denying relief.  ECF No. 193, p. 29.

6    Kirksey does not challenge the adequacy of Nev. Rev. Stat. 34.726 as it is generally applied,
7 but claims that the rule is inadequate to bar relief in his particular situation because it does not
8 contemplate the discovery of new evidence after the one-year time period has elapsed.  The newly
9 discovered evidence to which Kirksey refers is evidence suggesting that the trial judge, Judge
10 Lehman, authored a "supplemental competency report"[1] that he represented as coming from a
11 psychiatrist, Dr. Master, who was retained to determine whether Kirksey was competent to assist
12 counsel in his defense.

13    While it does not specifically mention newly discovered evidence, Nev. Rev. Stat. § 34.726
14 contains an exception based on "good cause shown for delay."  The Nevada Supreme Court in
15 Kirksey's case followed well-established precedent that good cause in this context is "'an
16 impediment external to the defense [that] prevented him or her from complying with the state
17 procedural default rules.'"  ECF No. 180-5, p. 257 (quoting *Hathaway v. State*, 119 Nev. 248, 252,
18 71 P.3d 503, 506 (2003) (citations omitted)).  The court explained further, again citing to well-
19 known case law, that "'a showing that the factual or legal basis for a claim was not reasonably
20 available to counsel, or that some interference by officials made compliance impracticable'" would
21 satisfy the standard.  *Id*.  Accordingly, the court does not agree with Kirksey's argument that "once
22 the one-year limitations period of Nev. Rev. Stat. § 34.726 expires there is no state procedural rule
23 ///

24 ──────────────

25    [1]   This "report" consists of one paragraph, stating, without any elaboration whatsoever, that Kirksey is competent to assist his counsel, understands the significance of the act for which he is
26 charged, understands the difference between right and wrong, and knows the meaning of his *Miranda* rights and the significance of waiving them. ECF No. 178-3, p. 118.

6

that speaks to the treatment of newly discovered evidence."[2]

Beyond the adequacy argument, Kirksey raises several additional arguments as to why some or all of his claims are not procedurally defaulted. First, Kirksey relies on excerpts from a transcript of a February 7, 2007, state district court hearing to argue that his judicial bias claim (i.e., Claim Two of his fourth amended petition) was adjudicated on the merits in state court. However, the final order filed by the state district court on March 2, 2007, contains no indication that such was the case. ECF No. 180-4, p. 133-39. Moreover, as mentioned above, the mandate from the Nevada Supreme Court was for the district court to confine its consideration of Kirksey's petition to two distinct issues, those being whether he could show good cause for raising claims related to his competency and possible judicial bias and whether Kirksey is mentally retarded. ECF No. 180-3, p. 148-59. On appeal, the Nevada Supreme Court conducted what amounted to a *de novo* review of the evidence and concluded that Kirksey had failed to show good cause and actual prejudice to excuse his procedural defaults. ECF No. 180-5, 258-71. Accordingly, the Nevada Supreme Court determined that Kirksey's judicial bias claim was procedurally barred.

Next, Kirksey contends that the State is judicially and equitably estopped from asserting procedural default as an affirmative defense because the State induced the delays that caused the default. In this regard, Kirksey claims that the State's actions contributed to prolonging Kirksey's investigation in support of his judicial bias claim.

Judicial estoppel applies only when a party, during the course of a proceeding, takes litigation positions that are clearly inconsistent and directly contradictory. *See Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) ("The doctrine of judicial estoppel, sometimes referred to as the doctrine of preclusion of inconsistent positions, is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process." (citation omitted)). Even assuming all of his allegations regarding the State's conduct are

---

[2] Because Kirksey has not otherwise challenged the adequacy of Nev. Rev. Stat. § 34.726, the State has carried its under burden, under *Bennett*, of proving the adequacy of the state bar.

1  true, Kirksey has not shown that the State took a litigation position that directly contradicts its
2  assertion of procedural default as an affirmative defense. *See Randle v. Crawford*, 604 F.3d 1047,
3  1053 -1054 (9th Cir. 2010) (setting forth the requirements for judicial estoppel). And, based on
4  *Golden v. Faust*, 766 F.2d 1339, 1341 (9th Cir. 1985), a case upon which Kirksey relies, the doctrine
5  of equitable estoppel involves elements not present here – those being, the concealment or
6  misrepresentation of material facts by the party to be estopped and detrimental reliance by the other
7  party.

8        Kirksey also argues that he can show cause sufficient to overcome the procedural default of
9  his claims of judicial bias, competency, and ineffective assistance of trial counsel. More specifically,
10 he contends that he "can overcome any purported default as a matter of federal law because the
11 misleading representations of Judge Lehman at trial, his position as the adjudicator of the issue of his
12 own bias during the first state postconviction proceeding, and his presence as the jurist who would
13 have received the case again in his department until his retirement from the bench in January of
14 2003, establish an impediment external to the defense and cause to overcome any default." ECF No.
15 202, p. 12.

16       To establish cause for the purpose of excusing procedural default, a petitioner must show that
17 "some objective factor external to the defense impeded counsel's efforts to comply with the State's
18 procedural rule." *Murray*, 477 U.S. at 488. In this respect, Kirksey relies heavily on the
19 aforementioned allegation that Judge Lehman ghost-wrote the "report" signed by Dr. Master and
20 concealed that fact from the defense. Even if the allegation is true, however, it cannot account for
21 Kirksey's failure to present his claims in his to the state court earlier than March 2003.

22       To begin with, the report itself was provided to the defense within a week of its creation in
23 June of 1989. ECF No. 178-5, p. 118. Kirksey points to no conduct on the part of Judge Lehman
24 subsequent to a hearing on June 28, 1989, that could be construed as him intentionally
25 / / /
26 / / /

misrepresenting or concealing the manner in which the report was produced.[3]  And, no matter who drafted the one paragraph report, Dr. Master Kirksey testified that he signed the report and that the report accurately stated his conclusions.  ECF No. 180-5, p. 262, 264.

Because Kirksey's conviction resulted from a guilty plea, a consideration of his competence at the time was critical to any attempt to collaterally challenge the conviction.  Kirksey alleged in his first post-conviction petition in 1992 that his constitutional rights were violated because Judge Lehman communicated *ex parte* with Dr. Master, who thereafter changed his opinion about Kirksey's competence.  ECF No. 179-4, p. 110.  The appropriate time to delve into any irregularities[4] in relation to the report was during that proceeding, not several years later.

As for other aspects of Judge Lehman's adjudication of his post-conviction proceedings, Kirksey claims that the judge's actions prevented him from investigating and presenting his claims, but he does not specify which particular claims or how the judge prevented him from raising them.  Moreover, Kirksey had the opportunity to appeal the judge's adverse rulings.

Next, Kirksey argues that the "procedural viability" of his judicial bias claim and the state court finding of mental retardation implicate numerous other claims in his petition, thereby rendering them ripe for a consideration on the merits.  The first part of this argument is premised on the faulty assumption that Kirksey's judicial bias claim (i.e., Claim Two) is alive and well because it is based on the "newly discovered evidence" showing Judge Lehman drafted the supplemental competency report.  As explained above, this court is not convinced that this evidence could not have been discovered several years earlier through the exercise of due diligence.

As for the state court's finding of mental retardation, Kirksey argues that that determination

---

[3]  Kirksey asserts that Judge Lehman continued to conceal his authorship of the report by failing to mention it while presiding over the first post-conviction proceeding.  However, the authorship of the report was never at issue in that proceeding.

[4]  As noted by Kirksey, "the supplemental report was not on Master's letterhead, or on any letterhead, and Master's name was misspelled on the document, just as it was misspelled in the letter to counsel that was written by the trial judge forwarding the supplemental report to counsel."  ECF No. 202, p. 3.

9

requires this court to consider the following claims on the merits:  Claim One (failure of trial court to order competency hearing), Claim Three (ineffective assistance of trial counsel for failing to investigate mental health issues for the purposes of showing incompetency), Claim Four (incompetency to plead guilty), and Claim Twenty-One (invalidity of Mr. Kirksey's statements to the authorities).  The Ninth Circuit has noted that "[i]ncompetence and mental retardation are overlapping but distinct categories."  *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 810 n. 3 (9th Cir. 2003).  Because Kirksey cites no supporting authority for his position, the court is not convinced that a finding of mental retardation, in and of itself, excuses the procedural default of claims that may be tangentially related.

Kirksey also contends that the procedural default of his competency-related claims must be excused because the state district court in his second post-conviction proceedings confined the evidentiary hearing to his claims of judicial bias and mental retardation without allowing him to litigate "claims that were intertwined with these claims."  ECF No. 202, p. 17.  This argument puts the cart before the horse.  The state district court did not permit the expansion of the evidentiary hearing because, as noted above, the Nevada Supreme Court had determined that the claims were procedurally defaulted.  The state court was under no obligation to allow Kirksey to present evidence in support of claims that were not properly before the court.

Next, Kirksey argues that Claims Three, Eight, Ten, and Twenty-one are not procedurally defaulted because they were exhausted on the merits in his first post-conviction proceeding.

Claim Three consists of various allegations that Kirksey received ineffective assistance of trial counsel.  Of the sub-claims contained within Claim Three,[5] only Claim Three(D) was fairly presented to the Nevada Supreme Court in Kirksey's first post-conviction proceeding.  ECF No. 203-1, p. 47-50; *see Castillo v. McFadden*, 399 F.3d 993, 999 (9th Cir. 2005) (noting that exhaustion requires petitioner to describe both the operative facts and the federal legal theory on which his claim

---

[5] In their briefing on the motion to dismiss, the parties have used A through E to denominate the five sub-claims contained within Claim Three.

is based) (citations omitted). The remaining sub-claims remained unexhausted until the conclusion of Kirksey's second post-conviction proceeding.

In Claim Eight, Kirksey alleges that appellate counsel failed to provide effective assistance of counsel by failing to raise on appeal the federal constitutional issues asserted in his fourth amended petition as Claims One through Six and Nine through Twenty-Five. He also faults appellate counsel for neglecting to obtain portions of the state court record and for stating at oral argument before the Nevada Supreme Court that the court's mandatory review did not apply because there was a voluntary entry of a guilty plea. The claim was exhausted in Kirksey's first state post-conviction proceeding, but only as to the allegations that appellate counsel was ineffective by not obtaining certain transcripts and for not raising arguments that the trial court erred in (1) refusing to appoint a second attorney and (2) conducting an *ex parte* meeting with Dr. Master. ECF No. 203-1, p. 55-56.

Claim Ten alleges a violation of constitutional rights arising from Kirksey's absence from the *ex parte* communication between Judge Lehman and Dr. Master regarding Kirksey's competence. This claim was exhausted in Kirksey's first state post-conviction proceeding. *Id.*, p. 53-55.

In Claim Twenty-one, Kirksey alleges that his conviction violates his constitutional rights because law enforcement officials interrogated him in the absence of a voluntary, knowing and intelligent waiver of his federal constitutional rights. Although presented in the context of arguing ineffective assistance of counsel, this claim was fairly presented to the Nevada Supreme Court. *Id.*, p. 44-47; *see Kirksey*, 112 Nev. at 990-992, 923 P.2d at 1109 - 1110.

With respect to Claim Thirteen, wherein he alleges that the State failed to abide by its constitutional obligation to disclose exculpatory and impeachment evidence, Kirksey argues that the default was not based on an adequate or independent rule because the state court's disposition of the claim was intertwined with the federal law merits of the claim. This argument fails for the simple reason that the Nevada Supreme Court did not dispose of the claim in the manner Kirksey claims. *Cf. Cooper v. Neven*, 641 F.3d 322, 332 (9th Cir. 2011) ("In this case, the Nevada Supreme Court explicitly relied on its federal *Brady* analysis as controlling the outcome of its state procedural

default analysis.").

Likewise, Kirksey has not shown cause and prejudice under *Banks v. Dretke*, 540 U.S. 668 (2004), to overcome the default of Claim Thirteen. In *Banks*, the Supreme Court applied the "cause and prejudice" standard established in *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 11 (1992), to determine whether a petitioner was entitled to an evidentiary hearing on his *Brady*[6] claim in federal court. As part of that analysis the Court held that "a petitioner shows 'cause' when the reason for his failure to develop facts in state-court proceedings was the State's suppression of the relevant evidence." *Banks*, 540 U.S. at 691.

The Court suggested, however, that the mere withholding or non-disclosure of evidence does not suffice to establish cause in this context. Instead, the petitioner needs to show that the State actively concealed the evidence and misrepresented its compliance with *Brady*. *See id.* at 693 ("In short, because the State persisted in hiding [the witness's] informant status and misleadingly represented that it had complied in full with its *Brady* disclosure obligations, Banks had cause for failing to investigate, in state post conviction proceedings, [the witness's] connections to [the police]."). Here, Kirksey has not set forth allegations sufficient to show the type of prosecutorial misconduct required to show cause under *Banks*.

Finally, Kirksey argues that he can show good cause and prejudice to overcome the procedural default of Claims Fifteen (challenging the racial composition of grand jury) and Nineteen (claiming insufficient evidence to support conviction) because, for each, he exhausted a claim of ineffective assistance of trial counsel for failing to raise the underlying issue.[7] As respondents point out, however, presenting a claim is not the same as proving a claim. The Nevada Supreme Court rejected both ineffective assistance of counsel claims. *Kirksey*, 112 Nev. at 988-90, 923 P.2d at

///

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

[7] Kirksey also makes this argument with respect to Claim Twenty-one, but, as discussed above, that claim was not procedurally defaulted because it was exhausted in Kirksey's first state post-conviction.

1107-09. Kirksey does not indicate how those determinations were erroneous.[8]

Based on the foregoing, the court concludes that it is barred by the doctrine of procedural default from reviewing the merits of all of the claims in Kirksey's fourth amended petition except for Claim Three(D), Claim Eight (but only as to the allegations specified above), Claim Ten, and Claim Twenty-one.

III. *Timeliness*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year filing period for § 2254 habeas petitions in federal court. 28 U.S.C. § 2244(d)(1). The one-year period begins to run from the latest of four possible triggering dates, with the most common being the date on which the petitioner's state court conviction became final (by either the conclusion of direct appellate review or the expiration of time for seeking such review). *Id.* Statutory tolling of the one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other collateral review is pending. 28 U.S.C. § 2244(d)(2). Respondents concede that Kirksey filed his initial petition within the one-year filing period under § 2244(d)(1). Respondents argue, however, that most of Kirksey's habeas claims are time-barred from federal court review because he did not present them to this court until after the one-year period elapsed and those claims do not "relate back" to an earlier-filed petition.

The Supreme Court's decision in *Mayle v. Felix*, 545 U.S. 644 (2005), significantly limits a habeas petitioner's ability to have newly-added claims "relate back" to the filing of an earlier petition and, therefore, be considered timely under 28 U.S.C. § 2244(d). In *Mayle*, the Court held that the Ninth Circuit's former relation-back standard under Federal Rule of Civil Procedure 15(c)(2) (now

/ / /

/ / /

---

[8] As addressed below, Kirksey asks for an evidentiary hearing "to show cause and prejudice based on ineffective assistance of trial and appellate counsel for failing to raise the substantive constitutional claims in [his] petition." ECF No. 204, p. 6. He does not elaborate, however, on what evidence he intends to present that would cause this court to reach a different conclusion than the state court.

Rule 15(c)(1)(B)),[9] which allowed an amendment to a habeas petition to "relate back" to the date of the original petition "so long as the new claim stems from the habeas petitioner's trial, conviction, or sentence," was too broad. *Id*. at 656-57.  The Court held that an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a "common core of operative facts" with claims contained in the original petition. *Id*. at 663-64.  The common core of operative facts must not be viewed at too high a level of generality, and an "occurrence," for the purposes of Fed. R. Civ. P. 15(c), will consist of each separate set of facts that supports a ground for relief. *Id*. at 661.

Kirksey raises several arguments as to why some or all of his claims are not time-barred. First, he contends that his initial petition filed in 1997 gave the State adequate notice of several claims contained in his fourth amended petition, specifically, Claims Two, Three, Nineteen, Eight, Fifteen, and Twenty-one.

With regard to Claim Two, Kirksey argues that it relates back to Claim Five of his initial petition, wherein he relies upon the *ex parte* communication between Judge Lehman and Dr. Master and the subsequent production of the supplemental report to claim a violation of his constitutional right to due process.  See Docket #3 (hard copy), p. 14-15.  Because the operative facts supporting Claim Five in the initial petition are only small portion of those supporting Claim Two, it cannot be said that the two claims share a "common core of operative facts."  Thus, Claim Two does not relate back to the initial petition.

As for Claim Three, Kirksey contends that Claim Three(A and B) relates back to Claim Two(D) and Fourteen of the initial petition, Claim Three(C) relates back to Claim Two(A), Claim Three(D) relates back to Two(D), and Claim Three(E) relates back to Claim Four.  The court agrees with respect to each sub-claim except for Claim Three(B).  As such, Claim Three (A, C, D, and E) is timely.

Claim Eight relates back to Claim Eleven of the initial petition, but only as to the allegations

---

[9] Effective December 1, 2007, former Fed. R. Civ. P. 15(c)(2) was amended for stylistic purposes only and recodified as Fed. R. Civ. P. 15(c)(1)(B).

1  that appellate counsel was ineffective by not obtaining certain transcripts and for not raising
2  arguments that the trial court erred in (1) refusing to appoint a second attorney and (2) conducting an
3  *ex parte* meeting with Dr. Master.  See Docket #3 (hard copy), p. 22-23.  Finally, Claim Fifteen,
4  Nineteen, and Twenty-one relate back to Claim Two(B), Claim Two(C), and Claim Two(A),
5  respectively.
6        Next, Kirksey claims that the first amended petition, filed on January 26, 1998, was also filed
7  within one year of the date on which his state court conviction became final.  According to Kirksey,
8  his conviction became final on March 27, 1997, the date the Nevada Supreme Court issued its
9  remittitur in relation to his first state post-conviction proceeding.  That is not correct, however.
10 Kirksey's conviction became final on December 2, 1991, the date on which United States Supreme
11 Court denied his petition for writ of certiorari on direct review.  *See* 28 U.S.C. § 2244(d)(1)(A).
12       Kirksey filed his first post-conviction petition almost three months later, on February 28,
13 1992.  Thus, even if Kirksey were given the benefit of the March 27, 1997, remittitur date for
14 purposes of statutory tolling under 28 U.S.C. § 2244(d)(2), his first amended petition in this court
15 was still filed beyond the one-year period of limitation.
16       In the alternative, Kirksey argues that § 2244(d)(1)(B, D) provides later triggering dates for
17 claims arising from Judge Lehman's authorship of the supplemental competency report (Claims One,
18 Two, Three(E), Four, Six, Ten, Eleven, Twelve, Twenty, and Twenty-four), claims based on the state
19 court's mental retardation finding (Claims One, Three(B), Six, and Twenty-one), and claims based
20 on the State's failure to disclose material exculpatory and impeachment information (Claims Five
21 and Thirteen).  For reasons discussed above, however, the facts Kirksey relies upon to claim that
22 Judge Lehman drafted the competency report were actually discoverable through the exercise of due
23 diligence *before* his conviction became final.  Likewise, the court is also not convinced that factual
24 predicates of any of Kirksey's remaining claims were not discoverable until such time as would
25 render those claims timely-filed.
26       Next, Kirksey argues that he is entitled to equitable tolling of the statute of limitations.  The

Supreme Court has held that, in appropriate cases, equitable tolling is applicable to the statute of limitations imposed by § 2244(d). *Holland v. Florida*, 560 U.S. —, — , 130 S.Ct. 2549, 2560 (2010). Under *Holland*, a habeas petitioner is entitled to equitable tolling only if he can show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id*. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotation marks omitted). The application of equitable tolling is "highly fact-dependent." *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005).; *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000); *see also Holland*, 130 S.Ct. at 2565 ("often fact-intensive"). "[T]he threshold necessary to trigger equitable tolling ... is very high, lest the exceptions swallow the rule." *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (quoting *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002), and *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000)).

Kirksey advances essentially two "extraordinary circumstances" that, according to him, warrant the imposition of equitable tolling. First, he points to his reliance on the court's scheduling orders and delays related to discovery that he claims were caused and condoned by the State and the court, as well as delay brought about by the State in seeking to "negotiate" the case. Here again, Kirksey's argument fails because, even if discovery was necessary to flesh out his habeas claims, he has not shown that the factual predicates upon which his claims are based were not discoverable several years earlier.

As a second ground for equitable tolling, he notes that the relevant delay period occurred before *Mayle* was decided and that he relied prevailing precedent prior to the decision. The Ninth Circuit did not define the scope of relation back under Rule 15(c), as applied to habeas cases, until its decision in *Felix v. Mayle*, 379 F.3d 612 (9th Cir. 2004), the case subsequently overturned by the Supreme Court in *Mayle v. Felix*. Prior to that, there was no controlling case law in effect that would have mandated a finding that claims in an amended petition would relate back to the initial petition based merely on the fact that the claims arose from the same trial, conviction, or sentence.

16

In addition, most other circuits at the time took a narrow view in permitting habeas petition amendments to relate back under Rule 15(c) (*see United States v. Hicks*, 283 F.3d 380, 388-389 (D.C. Cir. 2002) (relevant transaction must be defined more narrowly than the trial and conviction); *United States v. Espinoza-Saenz*, 235 F.3d 501, 503-505 (10th Cir. 2000) (same); *Davenport v. United States*, 217 F.3d 1341, 1344-1346 (11th Cir. 2000) (same); *United States v. Pittman*, 209 F.3d 314, 317-318 (4th Cir. 2000) (same); *United States v. Duffus*, 174 F.3d 333, 337 (3rd Cir. 1999) (same); *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999) (same)), with only one circuit reading Rule 15(c) in the manner adopted by the Ninth Circuit in *Felix v. Mayle* (*see Ellzey v. United States*, 324 F.3d 521, 525-27 (7th Cir. 2003) (if original petition is timely filed, amendments referring to the same trial conviction may relate back)).  Thus, Kirksey's alleged reliance on pre-*Mayle* authority does not provided a ground for equitable tolling.  *Cf. Harris v. Carter*, 515 F.3d 1051, 1056 (9th Cir. 2008) (granting equitable tolling where petitioner was misled, by a Ninth Circuit holding, "into believing that he had ample time to file his federal habeas petition, whereas in reality time was running out").

Based on the foregoing, the court concludes that all of the claims in Kirksey's fourth amended petition are time-barred except for Claim Three(A, C, D, and E), Claim Eight (but only as to the allegations specified above), Claim Ten, Claim Fifteen, Claim Nineteen, Claim Twenty-one, and Claim Twenty-three.

Lastly, Kirksey also argues that his "factual innocence" excuses any procedural defects related to his substantive claims.  A showing of "actual innocence" is a recognized method for a petitioner to avoid procedural bars to consideration of the merits of his petition.  *See Schlup v. Delo*, 513 U.S. 298, 316 & n. 16 (1995).  The Ninth Circuit has held that the "actual innocence" gateway is available to avoid dismissal of a petition that otherwise would be time-barred by under § 2244(d). *Lee v. Lampert*, 653 F.3d 929, 945 (9th Cir. 2011).

Under *Schlup*, "actual innocence" is established when, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted [the petitioner]."  *Bousley v. United*

1  *States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-28). The petitioner must establish
2  his factual innocence of the crime, and not mere legal insufficiency. *Id.*; *Jaramillo v. Stewart*, 340
3  F.3d 877, 882-83 (9th Cir. 2003). Moreover, "[t]o be credible, [a claim of actual innocence] requires
4  petitioner to support his allegations of constitutional error with new reliable evidence – whether it be
5  exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that
6  was not presented at trial." *Schlup*, 513 U.S. at 324; *Calderon v. Thompson*, 523 U.S. 538, 559
7  (1998). As such, a petitioner cannot meet the gateway actual-innocence standard by merely alleging
8  that there was insufficient evidence presented at trial to support a finding of guilt. *See House v. Bell*,
9  547 U.S. 518, 538 (2006).
10        Here, Kirksey claims that he can show actual innocence because, in the case against his co-
11  defendant, the State argued that the facts of the case only amounted to manslaughter and there was
12  insufficient evidence to show that the victim's death was the result of criminal agency. He proffers
13  no new reliable evidence of the type contemplated by *Schlup*. As such, this is not one of the rare
14  cases in which the petitioner can establish his actual innocence.
15        IV. *Mootness*
16        Respondents argue that Claims Fourteen and Twenty-three are moot because Kirksey's death
17  sentence has been set aside. Though the claims are subject to dismissal on procedural default and
18  timeliness grounds, they challenge Kirksey's conviction as well as his sentence. Thus, respondents'
19  mootness argument is without merit.
20        V. *Motion for evidentiary hearing*
21        Kirksey asks for an evidentiary hearing to support relevant factual allegations contained in
22  his opposition to the motion to dismiss to the extent that those allegations are contested by the State.
23  Because he seeks a hearing on procedural issues, the restrictions imposed by 28 U.S.C. § 2254(e)(2)
24  do not necessarily apply to Kirksey's request. Even so, he must allege facts which, if true, would
25  entitle him to relief, in order to be entitled an evidentiary hearing. *See, e.g., Mendoza v. Carey*, 449
26  F.3d 1065, 1071 (9th Cir.2006) (holding that petitioner should have been granted a hearing by the

district court because alleged facts that, if true, may warrant equitable tolling).

The court discerns no disputed facts that would impact its analysis of respondents' motion to dismiss, as set forth above.  Accordingly, Kirksey's request for an evidentiary hearing shall be denied.

**IT IS THEREFORE ORDERED** that respondents' "Motion to Dismiss Certain Claims Contained Within Petitioner's Fourth Amended Petition For Writ of Habeas Corpus" (ECF No. 193) is GRANTED in part and DENIED in part.  For the reasons set forth above, all of the claims in petitioner's fourth amended petition (ECF No. 177), except for except for Claim Three(D), Claim Eight (but only as to the allegations specified above), Claim Ten, and Claim Twenty-one are DISMISSED.

**IT IS FURTHER ORDERED** that petitioner's motion for an evidentiary hearing (ECF No. 204) is DENIED.

**IT IS FURTHER ORDERED** that respondents shall have **forty-five (45) days** from the date on which this order is entered within which to file their answer to petitioner's remaining claims.  In all other respects, the scheduling of this matter is governed by the order entered on July 20, 2010 (ECF No. 181).

DATED this 26th day of March, 2012.

_____
Gloria M. Navarro
United States District Judge