# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JIMMY TODD KIRKSEY,

    Petitioner,

vs.

RENEE BAKER, *et al.*,

    Respondents.

2:97-CV-0333-LRH-PAL

**ORDER**

Before the court for a decision on the merits is an application for a writ of habeas corpus (ECF No. 177) filed by Jimmy Todd Kirksey, a Nevada prisoner whose death penalty has been set aside pursuant *Atkins v. Virginia*, 536 U.S. 304 (2002), and has yet to be re-sentenced in state court.[1]

I.  FACTUAL AND PROCEDURAL HISTORY

On October 2, 1989, petitioner Kirksey entered a guilty plea to first degree murder in the Eighth Judicial District Court of Nevada. In a subsequent appeal, the Nevada Supreme Court recounted the facts of his case as follows:

> In the late evening of May 3, 1988, and early morning of May 4, 1988, appellant Jimmy Todd Kirksey and Jerry Wayne Jordan met Eva Marie Kearns. Kearns had recently been beaten by her boyfriend, Michael Foxx. Kirksey told Kearns and Jordan that he wanted to talk to Foxx and teach him a lesson.
>
> The three went to Foxx's motel room and knocked on the door. When Foxx opened the door, Kirksey forced his way in and began beating Foxx. Kirksey immediately knocked Foxx onto the bed and then sat on Foxx's chest and hit him about the face and head. Kirksey then dragged Foxx onto the floor and continued to kick and beat Foxx about the face and head. The beating ruptured an aneurism in

---

[1] The court is informed and believes that re-sentencing has been suspended pending the outcome of this proceeding.

Foxx's brain, killing him. Kirksey later told a police officer that he intended to kill Foxx.

*Kirksey v. State*, 814 P.2d 1008, 1008-09 (Nev. 1991).

Prior to entering his plea, Kirksey was informed by the state court, on the record, that the state would seek the death penalty and that his plea could result in a sentence of death. A three-judge panel was appointed to preside over sentencing. After a penalty hearing held on November 13 and 14, 1989, the panel recommended a sentence of death. The court entered a judgment of conviction on January 12, 1990.

On appeal, the Nevada Supreme Court concluded that two of the aggravating circumstances found by the three-judge panel should not have been considered, but affirmed the conviction and sentence. *Id.* at 1011. The United States Supreme Court denied Kirksey's petition for writ of certiorari on December 2, 1991. *Kirksey v. Nevada*, 502 U.S. 989 (1991).

On February 28, 1992, Kirksey filed a petition for post-conviction relief in the state district court pursuant to former Nev. Rev. Stat. Chapter 177. An evidentiary hearing was conducted on February 1, 1993. On April 14, 1993, the district court denied the petition. The Nevada Supreme Court affirmed the order of the district court on August 16, 1996 (rehearing denied January 4, 1997). *Kirksey v. State*, 923 P.2d 1102 (Nev. 1996).

On March 21, 1997, Kirksey filed a federal petition initiating the instant proceeding. On January 26, 1998, Kirksey filed a first amended federal habeas petition for writ of habeas corpus. Following extensive discovery proceedings related to the trial court's role in the creation of a psychiatric evaluation, including several depositions and the retention of a questioned documents examiner, Kirksey filed a third amended federal petition on October 7, 2002.

On March 6, 2003, Kirksey filed a post-conviction petition for a writ of habeas corpus in the state district court. On May 6, 2003, this court stayed federal proceedings to allow Kirksey an opportunity to exhaust his unexhausted federal claims in state court. The State opposed Kirksey's state petition as procedurally barred. The state district court ordered the State to respond to the claims on the merits and set the matter for an evidentiary hearing.

///

The State sought extraordinary relief with the Nevada Supreme Court by way of a petition for a writ of prohibition or mandamus challenging the order granting the evidentiary hearing. The Nevada Supreme Court granted the petition in part, concluding that a full hearing on Kirksey's numerous claims was not warranted due to the procedural bars. In denying the petition in part, the state supreme court determined that an evidentiary hearing was necessary to consider whether Kirksey could show good cause for raising claims related to his competence and possible judicial bias and whether Kirksey is mentally retarded, the latter of which would require that the death sentence be vacated pursuant to *Atkins v. Virginia*, 536 U.S. 304 (2002).

On February 6-8, 2006, a limited evidentiary hearing was conducted concerning those claims. The state district court determined that Kirksey is mentally retarded and ordered a new sentencing hearing. The state district court also concluded that appellant failed to demonstrate good cause and prejudice to overcome the procedural bars. Thus, on March 2, 2007, the district court granted the petition as to the claim of mental retardation, but denied the remainder of the claims in the petition as procedurally barred. Kirksey appealed.

On August 21, 2009, the Nevada Supreme Court entered an order affirming the denial of Kirksey's state petition on procedural grounds. On January 7, 2010, the Nevada Supreme court denied en banc reconsideration.

On April 5, 2010, Kirksey filed a motion to vacate the stay herein, which was unopposed by the State and granted by the court. Kirksey then filed this his fourth amended petition for writ of habeas corpus. On June 20, 2011, respondents filed a motion to dismiss several claims in the petition on procedural grounds. On March 26, 2012, the court granted in part and denied in part the respondents' motion, concluding that nearly all of Kirksey's claims are either barred by the doctrine of procedural default or by the statute of limitations or both. Kirksey file a motion for reconsideration of that decision, which the court denied on July 9, 2012.

On October 4, 2012, respondents filed an answer to the remaining claims in Kirksey's petition – i.e., Claim Three(D), certain allegations contained within Claim Eight, Claim Ten, and Claim Twenty-one. On January 15, 2013, Kirksey filed a reply to that answer and a motion for an evidentiary hearing. Having considered all the parties' arguments with regard to the merits of those

claims and Kirksey's motion, the court finds and concludes as follows.

## II. STANDARDS OF REVIEW

Because this action was initiated after April 24, 1996, the amendments to 28 U.S.C. § 2254 enacted as part of the Antiterrorism and Effective Death Penalty Act (AEDPA) apply. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997); *Van Tran v. Lindsey*, 212 F.3d 1143, 1148 (9th Cir.2000), overruled on other grounds by *Lockyer v. Andrade*, 538 U.S. 63 (2003).

28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller–El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). "A state court's determination

4

that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 131 S.Ct.1388, 1398 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

"[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 131 S.Ct. at 1398.  In *Pinholster*, the Court reasoned that the "backward-looking language" present in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made," and, therefore, the record under review must be "limited to the record in existence at that same time, i.e., the record before the state court." *Id*.

For any habeas claim that has not been adjudicated on the merits by the state court, the federal court reviews the claim *de novo* without the deference usually accorded state courts under 28 U.S.C. § 2254(d)(1). *Chaker v. Crogan*, 428 F.3d 1215, 1221 (9th Cir. 2005); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).  *See also James v. Schriro*, 659 F.3d 855, 876 (9th Cir. 2011) (noting that federal court review is *de novo* where a state court does not reach the merits, but instead denies relief based on a procedural bar later held inadequate to foreclose federal habeas review).  In such instances, however, the provisions of 28 U.S.C. § 2254(e) still apply. *Pinholster*, 131 S.Ct at 1401 ("Section 2254(e)(2) continues to have force where § 2254(d)(1) does not bar federal habeas relief."); *Pirtle*, 313 F.3d at 1167-68 (stating that state court findings of fact are presumed correct under § 2254(e)(1) even if legal review is *de novo*).

Lastly, the Court in *Lockyer* rejected a Ninth Circuit mandate for habeas courts to review habeas claims by conducting a *de novo* review prior to applying the "contrary to or unreasonable application of" limitations of 28 U.S.C. § 2254(d)(1). *Lockyer*, 538 U.S. at 71.  In doing so, however, the Court did not preclude such an approach.  "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) –

5

whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.*

III. ANALYSIS OF CLAIMS

**Claim Three(D)**[2]

In Claim Three(D), Kirksey claims that he received ineffective assistance of counsel because his trial counsel relied upon the prosecutor to provide him with relevant discovery and to advise him on how to litigate the case. Specifically, the claim alleges that trial counsel's discovery and investigation was limited to the contents of the prosecutor's file and omitted evidence collected by the police and contacts between Kirksey and the lead detective on the case. It also alleges trial counsel relied on the prosecutor for advice regarding Kirksey's stated desire to waive his right to a direct appeal.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court propounded a two prong test for analysis of claims of ineffective assistance of counsel: a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694. In the context of a guilty plea, a petitioner satisfies the prejudice prong of the *Strickland* test where "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Kirksey exhausted this claim by presenting it, albeit in a somewhat different form, to the Nevada Supreme Court in his first post-conviction proceeding. ECF No. 203-1, p. 47-50.[3] After identifying *Strickland* as the the relevant federal law, the state supreme court addressed the claim as follows:

---

[2] Though not denominated as such in the fourth amended petition, Claim Three(D) is the fourth of five sub-claims contained within Claim Three and includes the allegations located on pages 52 and 53 of the petition.

[3] Citations to page numbers for electronically filed documents are based on the CM/ECF pagination.

6

Kirksey argues that he has been denied effective assistance of counsel because counsel failed to pursue any independent investigation of the facts underlying the murder charge. Specifically, Kirksey contends that [trial counsel] Kelesis' representation was deficient because he never consulted with the independent investigator appointed for the defense, never talked to Jerry Jordon [Footnote: Jordon was with Kirksey in Foxx's motel room and had made a statement to the police that Kirksey had beaten Foxx. Jordon was acquitted on a charge of involuntary manslaughter] about testifying, never contacted LVMPD Detective Dibble to obtain the homicide notebook, never tried to view the physical evidence, never sought an independent medical examination as to the cause of death, never obtained medical records from Riverside General Hospital establishing Kirksey's long history of cocaine use and psychotic behavior, never conducted an independent investigation of the California murders, and never contacted family members. Kirksey therefore concludes that Kelesis could not have made an informed and rational decision to acquiesce in Kirksey's instructions not to prepare a defense.

Kelesis testified at the post-conviction hearing that he reviewed the prosecution's file, autopsy reports on both the Nevada and California murders, grand jury testimony, and prison records from California. He further testified that he had wanted to meet with Kirksey's mother, but Kirksey instructed him not to do so. Kelesis also stated that he had discussed the State's evidence with Kirksey on several occasions.

First, we conclude that Kelesis' decision was objectively reasonable under the circumstances. In *Thomas v. Lockhart*, 738 F.2d 304, 308 (8th Cir.1984), the Eighth Circuit concluded that an attorney's performance was deficient where he relied solely on the prosecution's file, medical reports, and interviews with the defendant where the defendant consistently maintained his innocence and denied statements made to the police. The *Thomas* court specifically distinguished that case from one wherein the defendant has not provided the attorney with any information that would cast doubt on the events as portrayed in the prosecutor's files. *Id.*; *see also Benson v. United States*, 552 F.2d 223, 224–25 (8th Cir.), *cert. denied*, 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 120 (1977).

Here, Kirksey never denied his involvement and never suggested to Kelesis that his statements were made involuntarily. Everything Kirksey told Kelesis appeared to be consistent with the prosecution's file. Additionally, on July 13, 1989, Judge Lehman received a handwritten letter from Kirksey. In that letter, Kirksey admitted to the two California murders and the Las Vegas murder. [Footnote omitted.] It is also clear that based upon his investigation, Kelesis believed there were issues regarding the cause of death which he could have raised with the jury. Kirksey refused to give him that opportunity. Additionally, in his July 1989 letter to Judge Lehman, Kirksey wrote: "This sorry ass old attorney [sic] you gave me. This fool thinks he is going to lower this down to man slotter [sic]. But between me and you old man we know better than that."

Kirksey's letter indicates that Kelesis had presented him with the possibility of a lesser charge, but that Kirksey was determined to plead guilty and ask for a death sentence. In viewing the circumstances of this case from Kelesis' point of view at the time, we are unable to conclude that Kelesis' performance fell below an objective standard of reasonableness.

Further, we conclude that Kirksey has failed to show sufficient prejudice. As noted earlier, when a guilty plea is challenged for ineffective assistance, the defendant must show a reasonable probability that, but for counsel's errors, he would not have

7

>pleaded guilty and would have insisted on going to trial. Kirksey pleaded guilty without the benefit of any plea negotiations or promises from the prosecution; indeed, Kirksey was informed on the record that the State would seek the death penalty and that his guilty plea could result in a death sentence. There is no indication that his decision was the result of any urging by Kelesis or that any of the allegedly uninvestigated information would have induced Kirksey to change his mind and invoke his right to a trial.

*Kirksey*, 923 P.2d at 1110-11.

With respect to the performance prong of the *Strickland* test, Kirksey argues that a more vigorous investigation would have revealed a lack of evidence to support a first-degree murder conviction.[4] In particular, Kirksey contends that effective counsel would have been able to show that, due to a lack of criminal agency, Kirksey's actions in beating Mr. Foxx amounted to nothing more than manslaughter. As support for this position, Kirksey notes that counsel Kelesis failed to interview Jerry Jordon,[5] timely review the record of Jordon's trial, or develop evidence about the victim's pre-existing defect in his arteries.

"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691. Kirksey's intent to plead guilty mitigated, but did not eliminate, his attorney's duty to reasonably investigate. *See Langford v. Day*, 110 F.3d 1380, 1386-87 (9th Cir. 1996). In addition, counsel's duty to fully investigate the circumstances of a crime is elevated in a capital case, even when his client has admitted guilt. *Smith v. Mahoney*, 611 F.3d 978, 987 (9th Cir. 2010).

Here, the state supreme court arguably applied too low of a performance standard by using Kirksey's insistence on pleading guilty as a justification for counsel's failure to expand his investigation. *See Kirksey*, 923 P.3d at 1111 (suggesting that Kirksey's lack of cooperation excused counsel from further developing possible defenses). Moreover, the state court's determination that counsel provided effective assistance of counsel notwithstanding counsel's failure to even attempt to interview Jordon, an eyewitness to the offense, was an unreasonable application of the *Strickland*

---

[4] Kirksey also argues that trial counsel failed in his duty to investigate Kirksey's mental state to determine whether he was competent to assist counsel. However, the portion of Claim Three based on such allegations is procedurally defaulted and time-barred. ECF No. 208.

[5] Though the spelling "Jordan" appears throughout the record and pleadings herein, "Jordon" appears to be the correct spelling. See ECF No. 179-4, p. 291.

standard.

The same cannot be said, however, about the state court's determination that Kirksey had failed to show sufficient prejudice to establish a meritorious *Strickland* claim. The state court correctly identified *Hill* as the correct federal law standard to apply when the *Strickland* analysis involves a guilty plea. *Id.* at 1107. Applying that standard, the state court found no indication that counsel urged Kirksey to plead guilty or that the discovery of additional information by counsel would have caused Kirksey to invoke his right to trial. Kirksey has proffered no evidence in this proceeding to show that either of those findings were an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Accordingly, this court cannot say that the state court's adjudication of the claim is not entitled to the deference afforded by 28 U.S.C. § 2254(d). *See Richter*, 131 S.Ct. at 788 (holding that a federal habeas court's review of a state court's adjudication of a *Strickland* claim is "doubly" deferential). Such an outcome is supported by *Mahoney*, a more recent Ninth Circuit case addressing circumstances similar to those presented here. In that case, counsel's investigation was even more lackluster than that performed by Kirksey's counsel inasmuch as counsel only interviewed a handful of the thirty-five potential witnesses and "conceded that he 'did not feel a need to go beyond anything that Mr. Smith' told him." *Mahoney*, 611 F.3d at 988. Even so, the court of appeals concluded that the petitioner could not establish prejudice because the record showed that he "was independently adamant on pleading guilty and [had] never argued that he did not commit the crimes." *Id.* at 992.

Claim Three(D) is denied.[6]

### Claim Eight

In Claim Eight, Kirksey alleges that appellate counsel failed to provide effective assistance of counsel by failing to raise on appeal certain federal constitutional issues asserted in his fourth amended petition. This court has previously determined that the only aspects of this claim that are not procedurally defaulted are allegations that appellate counsel was ineffective by not obtaining

---

[6] The portion of the claim that alleges ineffectiveness based on counsel's reliance on the prosecutor for advice regarding Kirksey's appeal is wholly without merit. Even if the factual allegations supporting the claim are true, this court discerns no prejudice arising from counsel's actions.

9

1 certain transcripts and raising arguments that the trial court erred in (1) refusing to appoint a second
2 attorney and (2) conducting an ex parte meeting with Dr. Franklin Master, a psychiatrist appointed
3 by the state court to assess Kirksey's competence to stand trial.

4 Kirksey exhausted these claims in his first post-conviction petition. ECF No. 193-1, p. 59-
5 60. The Nevada Supreme Court denied the claims on two grounds. First, the court determined that,
6 because the alleged errors occurred before the guilty plea, appellate counsel could not have raised the
7 issues on direct appeal. *Kirksey*, 923 P.2d at 1114. Second, the court held that, even if the issues
8 could have been raised, there was no reasonable probability of success on appeal. *Id*. at 1114-15.

9 With respect to the second ground, the state supreme court correctly applied the *Strickland*
10 standard to Kirksey's claims. *See Hurles v. Ryan*, 706 F.3d 1021, 1033 (9th Cir. 2013) ("We consider
11 claims of ineffective assistance of appellate counsel according to the standard set forth in
12 *Strickland*."). In addressing the potential merit of a claim based on the trial court's refusal to appoint
13 co-counsel, the state supreme court stated as follows:

14 . . . Appointment of co-counsel under NRS 260.060 is discretionary, even in a capital case, and the denial of co-counsel is appropriate when the amount of preparation and
15 investigation required is not unduly burdensome. *See*, *e.g*., *DePasquale v. State*, 106 Nev. 843, 846, 803 P.2d 218, 220 (1990), *cert. denied*, 502 U.S. 829, 112 S.Ct. 99,
16 116 L.Ed.2d 70 (1991); *Sechrest v. State*, 101 Nev. 360, 367–68, 705 P.2d 626, 631–32 (1985). Since Kirksey's motion for co-counsel came approximately five
17 months prior to the scheduled trial, there was sufficient time for his attorney to investigate and prepare for trial.
18

19 *Id*. Kirksey makes no argument that the state court was wrong in concluding that the underlying
20 claim lacked merit as an issue on direct appeal. Thus, he has not shown that the state court was
21 objectively unreasonable denying his ineffective assistance of appellate counsel claim premised on
22 the trial court's failure to appoint co-counsel. Accordingly, Kirksey is not entitled to habeas relief
23 based on this portion of Claim Eight.

24 As for appellate counsel's failure to raise an issue based on the alleged ex parte meeting
25 between the trial court judge and Dr. Master, Kirksey argues that the Nevada Supreme Court's
26 decision is not entitled to deference because it was an unreasonable application of federal law as well
27 as being based on an unreasonable determination of the facts in light of evidence presented to the
28 state court. Even if reviewed *de novo*, however, this portion of Claim Eight fails for the reasons

discussed below in relation to Claim Ten.

**Claim Ten**

In Claim Ten, Kirksey alleges a violation of his constitutional rights arising from an ex parte communication between Judge Lehman, the trial court judge, and Dr. Master regarding Kirksey's competence. Pursuant to a request filed by Kelesis several months prior to Kirksey's guilty plea, the trial court appointed Dr. Master and Dr. Jack Jurasky to answer specific questions related to Kirksey's competence. ECF No. 179-2, p. 312-19. Dr. Jurasky filed a report concluding that Kirksey was competent, but Dr. Master filed one concluding that Kirksey was incompetent because he was suicidal and depressed. ECF No. 178-3, p. 108-16.

On June 21, 1989, Judge Lehman held a hearing at which he noted that Dr. Master had failed, in his report, to answer the specific questions posed by the court's order. *Id.*, p. 59. The judge then stated, as follows:

> What I'm going to do is contact Dr. Master and tell him that I want clarification of his report. And if it's still not clear or if he really disagrees with Dr. Jurasky, then we're going to appoint a third psychiatrist and let him break the log jam.

*Id.*, p. 60. A couple of days later the judge forwarded a "supplemental report" to both counsel that is dated June 22, 1989, and signed by Dr. Master. ECF 178-5, p. 117-19. That report consists of one paragraph and states, without any elaboration whatsoever, that Kirksey is competent to assist his counsel, understands the significance of the act for which he is charged, understands the difference between right and wrong, and knows the meaning of his *Miranda* rights and the significance of waiving them. ECF No. 178-3, p. 118.

Kirksey exhausted Claim Ten in his first post-conviction petition. ECF No. 193-1, p. 47-49. The Nevada Supreme Court in that proceeding addressed the claim in the context of deciding whether appellate counsel was ineffective in failing to raise it on direct appeal. *Kirksey*, 923 P.2d at 1114. As noted above, the court concluded that appellate counsel was not ineffective because the ex parte communication occurred before the guilty plea and, therefore, could not have been raised as an issue on direct appeal. *Id.*

The court then considered the merits of the underlying claim and concluded as follows:

> Although Judge Lehman's ex parte communication with Dr. Masters [sic] was

11

> inappropriate, there is no evidence that the communication resulted in bias or prejudice on the part of the judge. Additionally, there is no evidence that Dr. Masters [sic] was somehow coerced to change his opinion. We therefore conclude that this contention lacks merit and would have had no reasonable probability of success on appeal.

*Id*. at 1115 (footnotes omitted).

According to the United States Supreme Court, a defendant has a due process right to be present "'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987); (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)). Significantly, however, "the presence of a defendant is a condition of due process to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." *Snyder*, 291 U.S. at 107-08. In addition, a defendant may consent to exclusion, or counsel may waive the defendant's right to be present in person, even at a critical stage. *See*, *e.g*., *Campbell v. Wood*, 18 F.3d 662, 670–72 (9th Cir. 1994) (en banc).

At the June 21, 1989, hearing, Kirksey's counsel argued that, given the apparent difference of opinion between Dr. Jurasky and Dr. Master, the "normal procedure" was for Kirksey to be transferred to a mental health facility for further evaluation. ECF No. 178-3, p. 59. Counsel did not, however, object to Judge Lehman contacting Dr. Master, but instead asked merely that Dr. Master's report be independent of, and not influenced by, Dr. Jurasky's report. *Id*., p. 60-61.

Arguably, counsel waived Kirksey's right to be present during the communication between the judge and the psychiatrist. Even if he did not, however, the extent to which a fair and just hearing was thwarted by Kirksey's absence is difficult to gauge given the lack of information before this court about the nature and content of the communication. Judge Lehman's comments at the June 21 hearing followed by the issuance of the "supplemental report" a couple days later indicates that he contacted Dr. Master about his report. The record does not support, however, Kirksey's various allegations stating or suggesting that the two had an "in chambers meeting" to discuss the report (e.g., ECF No. 222, p. 19).

With respect to allegations that Judge Lehman "impermissibly affected" Dr. Master's opinion regarding Kirksey's competence (e.g., ECF No. 222, p. 21), Kirksey has submitted evidence that suggests that the competency report was prepared by the trial judge for Dr. Master's signature. ECF

No. 178-5, p. 117-19; ECF No. 180-2, p. 10-14.  But, as noted in this court's previous order (ECF No. 212, p. 4-5), Kirksey has not rebutted state court findings that the report reflected Dr. Master's opinion at the time and that the signature on the document is his.  ECF No. 180-4, p. 136; ECF No. 180-5, p. 262, 264.

Even assuming that Kirksey's absence from the ex parte communication violated his right to due process, such a violation is trial error, not structural error, so it is subject to review for harmlessness.  *Campbell v. Rice*, 408 F.3d 1166, 1172 (9th Cir. 2005) (en banc).  *See Sturgis v. Goldsmith*, 796 F.2d 1103, 1108–09 (9th Cir. 1986) (holding that a defendant has a constitutional right to be present at a competency hearing, but that a violation of the right is subject to harmless error review).  As such, relief is not available unless the ex parte communication between Judge Lehman and Dr. Master had "a substantial and injurious effect" on the outcome of the proceeding.  *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), and *Kotteakos v. United States*, 328 U.S. 750, 758 (1946)).[7]

Absent from the record is any convincing evidence that Kirksey was incompetent, under the relevant standard, at the time he entered his guilty plea.  "To be competent to stand trial, a defendant must demonstrate an ability 'to consult with his lawyer with a reasonable degree of rational understanding' and a 'rational as well as factual understanding of the proceedings against him.'"  *Douglas v. Woodford*, 316 F.3d 1079, 1094 (9th Cir. 2003) (quoting *Godinez v. Moran*, 509 U.S. 389, 396 (1993).  Competence "has a modest aim: It seeks to ensure that [the defendant] has the capacity to understand the proceedings and to assist counsel."  *Godinez*, 509 U.S. at 402.

While Dr. Master's initial report did not address these issues, it describes Kirksey as a "highly intelligent individual," but one who is "significantly clinically depressed."  ECF No. 178-3, p. 116.  Based on Dr. Jurasky's report, Kirksey met the competency standard.  Dr. Master's supplemental report, though conclusory, also stated that Kirksey was capable of assisting his attorney in his own defense at trial.  In addition, Kelesis testified at the 1993 evidentiary hearing that Kirksey

---

[7] The court in *Sturgis* identified *Chapman v. California*, 386 U.S. 18, 21-22 (1967), as the source of the applicable harmless error standard.  *See Sturgis*, 796 F.2d at 1109.  *Fry* confirms, however, that the standard in *Brecht* applies in this context.

was "very competent" and that he could not see a basis upon which he might be found incompetent. ECF No. 179-4, p. 323.

Assessments conducted at Kirksey's request in 1998 (by David L. Schmidt, Ph.D and by Dennis L. DePry, D.O.) also fall well short of establishing a reasonable probability that Kirksey was incompetent when he entered his guilty plea. For one, retrospective competency determinations made several years later are of limited probative value and generally disfavored. *Williams v. Woodford*, 384 F.3d 567, 610 (9th Cir. 2004). Secondly, both experts agreed that Kirksey's impairment made it difficult to understand complex issues, but neither indicated that Kirksey was unable to consult with his attorney with a reasonable degree of rational understanding or understand the proceedings against him. ECF No. 178-2, pp. 1-17, 32-53. Dr. DePry opined that Kirksey did not have "a valid and reliable competence evaluation prior to his trial or his sentencing," but could only speculate as to whether Kirksey was incompetent at that time. *Id*., p. 52.[8]

Kirksey directs the court's attention to Dr. Master's testimony at the 2006 evidentiary hearing and argues that Dr. Master "stood by his opinion that Mr. Kirksey was not competent to assist counsel." ECF No. 222, p. 30. At that hearing, Dr. Master testified as follows:

> I think in looking at the abbreviated statement of June 22nd, there is really only one point where there is conflict with my May 23rd report, and that is in statement number one, and again, I think it's a matter of interpretation. My June 22nd statement is "Mr. Kirksey is competent to assist his attorney in his own defense during a trial." By that, I'm saying that, yes, he knows what he's being charged with, he remembers the facts; that he was intelligent and verbal, but going back to my May statement, this was a man who did not want to defend himself, and not wanting to defend himself, he would not be rationally cooperative in assisting his defense counsel, so I would still stick by the original statement that he was not competent if he was suicidally depressed.

ECF No. 180-3, p. 196.

Dr. Master's re-confirmation of his initial opinion does not help Kirksey's argument. In *Deere v. Pinholster*, 718 F.3d 1124 (9th Cir. 2013), the court held that a plea "motivated by an irrational desire to be put to death" does not render a defendant incompetent and his plea invalid.

---

[8] Dr. Schmidt's testimony at the 2006 evidentiary hearing was similarly equivocal. Asked about Kirksey's competence "at the time of his trial," Dr. Schmidt testified that the issue was not "investigated sufficiently" and that he had "grave concerns" about Kirksey's ability to understand the proceedings against him and assist counsel in his defense. ECF No. 180-4, p. 9-10.

14

718 F.3d at 1146-47. In so holding, the court relied on its decision in *Dennis v. Budge*, 378 F.3d 880 (9th Cir. 2004), in which the court noted:

> The question . . . is not whether mental illness substantially affects a *decision*, but whether a mental disease, disorder or defect substantially affects the prisoner's *capacity* to appreciate his options and make a rational choice among them.

378 F.3d at 890 (emphasis in original). The court in *Budge* further explained that "rational choice" in this context does not mean a sensible or reasonable decision, but rather a choice made with a "rational understanding" of the available options. *Id.*

Given the absence of persuasive evidence that his absence from any ex parte communication between Judge Lehman and Dr. Master had a substantial and injurious effect on the trial court's competency determination, Kirksey is not entitled to habeas relief under Claim Ten. The claim is denied.

**Claim Twenty-one**

In Claim Twenty-one, Kirksey claims that his first-degree murder conviction is unconstitutional because law enforcement officials interrogated him in the absence of a voluntary, knowing, and intelligent waiver of his *Miranda* rights. Prior to pleading guilty, Kirksey made incriminating statements to the police in at least three separate interviews - two conducted by detectives in Riverside, California, on December 23 and 24, 1988, and one conducted by a detective in Las Vegas on February 8, 1989. ECF No. 178-7, p. 30-91. The allegations supporting Claim Twenty-one focus on circumstances surrounding the first of the two Riverside interviews.

According to those allegations, Kirksey was in need of medical treatment for an injured hand and under the influence of cocaine, and likely alcohol, at the time of the December 23 interview. He claims that those factors, especially when considered in combination with his various mental impairments, invalidate the waiver of his *Miranda* rights. He further alleges that, in the absence of those circumstances, he would have exercised his rights to remain silent and to obtain the assistance of counsel.

This claim is wholly without merit. Beyond the absence of evidence to support his claims of physical distress and intoxication during the December 23 interview, Kirksey recounted the details of the crime in subsequent interviews with law enforcement officials and, of course, plead guilty to first

degree murder. The Nevada Supreme Court addressed this claim in Kirksey's first post-conviction proceeding. *Kirksey*, 923 P.2d at 1109-10. The state supreme court's rejection of the claim is entitled to the deference afforded by 28 U.S.C. § 2254(d); and, Kirksey makes no argument that it does not. Claim Twenty-one is denied..

### IV. MOTION FOR EVIDENTIARY HEARING

Kirksey asks this court to grant him an evidentiary hearing on the remaining claims in his petition. ECF No. 223. After *Pinholster*, an evidentiary hearing is pointless once this court has determined that § 2254(d) precludes habeas relief. *See Pinholster*, 131 S. Ct. at 1411 n.20 ("Because Pinholster has failed to demonstrate that the adjudication of his claim based on the state-court record resulted in a decision 'contrary to' or 'involv[ing] an unreasonable application' of federal law, a writ of habeas corpus 'shall not be granted' and our analysis is at an end."); *see*, *also*, *Sully v. Ayers*, 2013 WL 3988674, 14 (9th Cir. 2013) (holding that lower court did not abuse its discretion in denying an evidentiary hearing on ineffective assistance claims that had been adjudicated in state court).

For claims to which *Pinholster* does not apply, this court's ability to grant Kirksey's request is limited by 28 U.S.C. § 2254(e)(2), which provides as follows:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-
>
> (A) the claim relies on-
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

The Supreme Court has interpreted subsection (e)(2) as precluding an evidentiary hearing in federal court if the failure to develop a claim's factual basis in state court is due to a "lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000).

///

A hearing is not barred, however, when a petitioner diligently attempts to develop the factual basis of a claim in state court and is "thwarted, for example, by the conduct of another or by happenstance." *Id.* Absent unusual circumstances, diligence requires that a petitioner, "at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437.

As explained above, § 2254(d) precludes habeas relief for Claims Three(D) and Twenty-one, and the portion of Claim Eight based on appellate counsel's failure to challenge the trial court's denial of co-counsel. Based on *Pinholster*, an evidentiary hearing would not serve any purpose with respect to those claims.

*Pinholster* does not necessarily bar consideration of new evidence with respect to Claim Ten and the portion of Claim Eight based on appellate counsel's failure to challenge the alleged ex parte meeting between Judge Lehman and Dr. Master. In addition, Kirksey argues that he is allowed to bypass § 2254(e)(2) because the state court limited his ability to develop facts in support of post-conviction claims. Even after considering all of Kirksey's proffered evidence, however, this court remains unconvinced that Kirksey was prejudiced by his absence from the purported ex parte meeting.[9]

Kirksey has not cited to any additional relevant evidence that he intends to present on this particular issue. Because he has not demonstrated that an evidentiary hearing would assist him in showing that he is entitled to relief, his motion for an evidentiary hearing shall be denied. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.") (citation omitted).

V. CONCLUSION

For the reasons set forth above, Kirksey is not entitled to habeas relief.

---

[9] On the issue of Kirksey's competence at the time of his plea and sentencing, Kirksey cites to the following exhibits attached to his fourth amended petition: 1, 4, 8-14, 16, 25, 26, 35, 38, 40. ECF No. 177, p. 21-23.

*Certificate of Appealability*

This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

Having reviewed its determinations and rulings in adjudicating Kirksey's petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any procedural issues or any of Kirksey's habeas claims.

**IT IS THEREFORE ORDERED** that petitioner's fourth amended petition for writ of habeas corpus (ECF No. 177) is DENIED. The Clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that a Certificate of Appealability is DENIED.

DATED this 13th day of September, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE